*Curd,* for appellant.

*Stanton & Throop,* for appellee.

---

BERNARD GUY *v.* DANIEL GUY.

**Tenancy—Lands—Permanent Improvements.**

Under a lease or tenancy by permission, fencing, grubbing ditching and clearing lands are not permanent improvements, as all these things are necessary to be done to enlarge the products of the farm and increase the profits of the tenant, but improvements to buildings and the making of a cistern are of a permanent character and the owner is liable therefor.

**Contracts—Verbal Agreement to Cultivate Farm—Pleadingss.**

In a suit for recovery of amount due under verbal contract to manage

a farm, and "if the sum of $1,000.00 is not made annually, the deficit to be made up by the owner," it must be alleged in the petition that this particular amount was not realized, and show in what the discrepancy will consist, in order to recover thereon.

APPEAL FROM LOUISVILLE CHANCERY COURT.

February, 13, 1868.

OPINION OF THE COURT BY JUDGE PETERS:

It is alleged in the petition that some time in April, 1859, or shortly before that time, appellant applied to appellee to take charge of his farm, and to take care of their mother, Mrs. Elizabeth Guy, their brother John, who then had charge of the farm having become dissipated, and that if he would reelinquish his business in Memphis, and remove to said farm, cultivate it, and take care of their mother, that in consideration thereof he verbally promised to convey to him the farm, so soon as he completed a mill, which he and one Clark were erecting in the city of Louisville, that he did remove to the farm in April, 1859, and undertook to cultivate the same, and to provide for and take care of their mother, and after having occupied said farm some five or six months, and not being a practical farmer, fearing he could not make wages at the business, proposed to surrender it to appellant, to which he objected, and urged him to continue in the cultivation and occupation of the farm, and that he, appellant, would guarantee and make sure to him one thousand dollars *per annum,* and on the faith of said promise and agreement he remained on said farm, and cultivated and managed it in a husband-like manner to the first of September, 1864.

Appellee then proceeds to allege that after receiving an economical living for himself, family and mother, he expended very considerable sums of money in lasting and valuable improvements, which he enumerates, and concludes by alleging that when he surrendered possession of said farm to appellant he promised to pay him for his services, stock and additional farming implements purchased and left on the farm, and says *"he verily believes"* he ought to recover of deficient in consideration of the premises $5,930, prays for a settlement of their account, for judgment, and for general relief.

The alleged promise to convey the land is denied in the answer, as is the contract to pay, or to guarantee to appellee $1,000 per year, as is all other material allegations of the petition, except it is admitted appellee occupied and cultivated the farm from April, 1859, till the latter part of August or the first of September, 1864. But it is expressly denied that any lasting or valuable improvements were put upon the land, except such as appellee put there for his own comfort, convenience and profit, and they were put there as averred by appellant without any agreement or promise on his part to pay for the same; and he pleads by way of counterclaim and set-off the use of the farm, the value of a number of cords of wood taken and sold by appellee, and other things, against any claim or damage appellee may have against him for improvements, stock, crops, &c. The counter-claim is controverted in the reply.

The case was referred to the master by the court below, with special instructions to charge appellee for a mare of appellant sold by him, for wood sold, for the use of the stock on the farm, when he took possession, of farming utensils, and work done in the spring of 1859, preparatory to the making the crops of that season, and the grain on hand. The the $1,000 is to be disregarded, that appellee is to be credited for all the improvements made, ditching, grubbing, fencing, buildings, &c., and the new stock left on the place, and for the crops on hand when appellant took possession, for the land cleared if it was good economy to clear it, &c.

Under these instructions, the master made two reports; the first being excepted to, it was again referred, with directions to discriminate between the stock on the farm when appellee entered, and the stock he left there when he gave up the farm. Upon the last reference, the master reported a balance of $4,450 in favor of appellee against appellant, to which exceptions were filed by the latter, but his exceptions were overruled, and judgment rendered for that sum, with interest from the first of September, 1864, till paid, and from that judgment this appeal is prosecuted.

The farm, as appeared, was cultivated from 1859 to 1864 inclusive of both years by appellee, and from his own showing, the promise to convey the land to him by his brother, after he had been there for several months, was not satisfactory to him, and he declared his intention to leave; when the contract was made

by them, that he was to remain and cultivate the farm, and if he failed to realize $1,000 per annum for his labor, appellant was to pay the deficit.

This contract is proved substantially by the mother of the parties, Mrs. E. Guy, and also by the sister Mrs. Thompson.

Although there is a general denial in the answer that such a contract was made, it is thus proved, and the facts accompanying the cultivation and management of the farm by appellee persuasively conduce to the conclusion that some such agreement was made by the parties, and it is difficult to account for the manner in which improvements were made, land cleared and implements supplied, and stock and crops left after the connection ceased, on any other hypothesis, and especially as there is no time proved when the contract was to end, it must be presumed the parties intended it to continue during the life of their mother, as her support and comfort seems to have entered into and formed a motive for the contract.

We are therefore of the opinion that the adjustment of the controversy was by the court below placed on the wrong basis. Whatever was the value of the lasting improvements put on the farm by appelle, at the time he surrendereded the possession thereof to appellant, he should be allowed, deducting therefrom any sum or sums of money that appellant may have advanced to pay for said improvements, but for fencing, grubbing, ditching and clearing land he cannot be allowed anything, as those things were done to enlarge the products of the farm, increase his own profits, and for his own benefit; but the improvement of the buildings, and the making of the cistern, are of a permanent character.

The crops remaining when appellee left, he is entitled to the value of, and to the value of the farming implements, including wagons, harness, &c., and to the additional stock left by him, which he purchased; but he is not entitled to pay for the increase of the stock which he took of appellant's when he went in. He should be charged with what stock of appellant he sold, for the wood cut and corded on the place which he sold, and for the grain, &c., used by appellee, which was on the place, but not for the hire of the negro woman, as she was probably left there by appellant to serve his mother, and as there is no allegation in the petition

that he failed to realize $1,000 per annum for the years preceding 1864, he is not entitled, as the pleadings now stand, for anything for those years; but it will be proper to permit the parties to amend their pleadings, upon the return of the cause, if application shall be made in reasonable time to do so.

As the judgement is based upon principles essentially different from those herein enunciated, and the result more unfavorable to appellant than an adjustment of the matters in controversy in conformity with this view will be as now appears, the judgment is reversed, and the cause remanded for further proceedings consistent herewith.

*Bullitt,* for appellant.

*Pirtle & Caruth,* for appellee.